IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
OPELIKA DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
| ) | | |
| HUDSON, LORRAINE S., ) | | Case No.: 07-80806-WRS-13 |
| ) | | |
| Debtor. ) | | |

| | | |
|---|---|---|
| LORRAINE S. HUDSON, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | AP No. 08-08023 |
| ) | | |
| LITTON LOAN SERVICING, LP, et al., ) | | |
| ) | | |
| Defendants. ) | | |

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, Litton Loan Servicing, LP. (hereinafter "Litton Loan" or Defendant"), Defendant in the above-referenced adversary proceeding, and files this Motion for Summary Judgment. As grounds therefore, Litton Loan asserts that there are no issues of material fact and that all claims asserted by Plaintiff are due to be dismissed as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Bankruptcy Rules of Procedure. In support of this Motion, Litton Loan states as follows:

### STATEMENT OF FACTS

1. On or about July 1, 2003, Lorraine Hudson (hereinafter "Hudson" or "Plaintiff") entered into a Mortgage and Promissory Note with Global Lending Group, Inc. in the amount of forty five thousand dollars and 00/100 ($45,000.00). *See* Mortgage and Note attached as Exhibits A and B.

2. On or about September 23, 2003, the servicing of the Plaintiff's Mortgage was assigned from Ocwen Federal Bank FSB to Litton Loan Servicing LP. *See* Letter dated October 8, 2003 attached as Exhibit C. Following this Assignment, and up to the present date, Plaintiff made her regular monthly payments directly to Litton Loan. *See* Affidavit of Loch attached as Exhibit D.

3. Litton Loan Servicing is the servicer for Deutsche Bank. *See* Affidavit of Loch attached as Exhibit D. The Plaintiff's loan was assigned later assigned to Deutsche Bank National Trust Company, as Trustee for the Holders of Finance America Mortgage Loan Trust 2003-1, Asset-Backed Certificates Series 2003-1 on June 12, 2007. The Assignment was recorded in the Probate Court of Chambers County, Alabama on June 21, 2007 at #2007-3342. *See* Assignment attached as Exhibit 1 to the Affidavit of Loch attached as Exhibit D.

4. On or about July 24, 2007, Plaintiff filed a voluntary Chapter 13 petition with the United States Bankruptcy Court for the Middle District of Alabama as Case No. 07-80806-WRS-13. The Plaintiff's Chapter 13 petition was accompanied by a Chapter 13 plan. *See* Chapter 13 Plan attached as Exhibit E.

5. The Plaintiff's Chapter 13 plan was subsequently confirmed by order of this Court dated November 28, 2007. *See* Chapter 13 Confirmation attached as Exhibit F. The Plaintiff's Chapter 13 plan does not contain any provisions that alter or amend the terms of the Plaintiff's Mortgage. Therefore, the Defendants charged the Plaintiff for any and all post-petition fees pursuant to the terms of the Mortgage that accrued post-petition. *See* Affidavit of Loch attached as Exhibit D.

6. The Plaintiff's Chapter 13 plan as confirmed included a prepetition arrearage to be cured through the plan to Litton Loan in the amount of $6,473.21. Pursuant to the confirmed

plan, Plaintiff was to make monthly payments to the trustee in the amount of $160.00. *See* Chapter 13 plan attached as Exhibit E.

7. The Plaintiff's Chapter 13 plan as confirmed also included a secured claim to be paid directly to Litton Loan. At the time of the plan confirmation, Plaintiff agreed to continue making contractual post petition payments directly to Litton. *See* Exhibit E; *See* Deposition of Hudson at 49 attached as Exhibit I.

8. On November 6, 2007, Litton Loan filed a Motion for Relief of Stay alleging a post-petition default by Plaintiff.

9. On or about December 26, 2007, this Court entered an Order on Motion for Relief of Stay. *See* Order dated December 26, 2007 attached as Exhibit G. At that time the Chapter 13 plan was amended to add all post-petition mortgage payments consisting of September 2007 in the amount of $465.14 and October through December 2007, in the amount of $426.35 per month, plus all post petition late charges and other charges in the amount of $52.74 that are due as of this date, plus attorney's fees of $600.00 and costs of $150.00 which totals **$2,546.93**.

10. Pursuant to the Order of December 26, 2007, Plaintiff's post-petition arrearage of $2,546.93 was placed in the Chapter 13 plan, and Plaintiff's payment to the Chapter 13 Trustee was amended to $193.00 bi-weekly. The Plaintiff was to reassume making her regular monthly mortgage post-petition payments to Litton beginning in January 2008. *See* Exhibit G.

11. The Order of December 26, 2007, further provided that upon default by the Plaintiff, "within the calendar month such payment comes due, and after a twenty (20) day written notice of default to Debtor(s) and Debtor(s) attorney, the stay provided under 11 U.S.C. § 362 and 11 U.S.C. § 1301 is terminated automatically without further order of this Court, as it relates to the enforcement of the lien regarding the aforementioned property, and LITTON, its

successor or assigns, shall be free to enforce any and all of its respective rights, title and interest in and to the aforementioned property, including foreclosure, in accordance with the provisions of the note and mortgage and the laws of the State of Alabama." *See* Exhibit G.

12. The December 26, 2007, Order further provides that "in the event a notice of default is issued pursuant to Debtor(s) noncompliance with this Order, LITTON may recover reasonable attorneys fees and costs for preparing such notice as allowed in accordance with the provisions of the note and mortgage and the laws of the State of Alabama." *See* Exhibit G.

13. Beginning in January 2008, Plaintiff made regular monthly payments to Litton on or about January 14, 2008; February 11, 2008; March 17, 2008; and May 5, 2008. *See* Exhibit D. Based on these four payments, as of May 5, 2008, the Plaintiff was post petition current through the month of April 2008. *Id.*

14. On or about May 27, 2008, the Plaintiff's made a payment in the amount of $400.00 with check number 0971 drawn on Charter Bank. On or about June 10, 2008, check number 0971 was returned for insufficient funds. *See* Letter dated June 10, 2008 attached as Exhibit 2 to the Affidavit of Loch attached as Exhibit D.

15. On or about June 20, 2008, the Plaintiff's made a payment in the amount of $400.00 with check number 0981 drawn on Charter Bank. On or about July 7, 2008, check number 0981 was returned for insufficient funds. *See* Letter dated July 7, 2008 attached as Exhibit 3 to the Affidavit of Loch attached as Exhibit D.

16. On or about June 26, 2008, Litton Loan sent a letter to the Plaintiff and her bankruptcy attorney Charles Ingrum, pursuant to the Court order of December 26, 2007, stating that the Plaintiff was in post-petition default for the months of May 2008 through June 2008. *See* June 26, 2008 Letter attached as Exhibit 4 to the Affidavit of Loch attached as Exhibit D.

This letter provided the Plaintiff with twenty days written notice to her and her counsel of the right to cure the post-petition default. *Id.*

17. On or about July 17, 2008, the Plaintiff's made a payment in the amount of $450.00 with check number 0984 drawn on Charter Bank. On or about July 31, 2008, check number 0984 was returned because the account was closed. *See* Letter dated July 17, 2008 attached as Exhibit 5 to the Affidavit of Loch attached as Exhibit D.

18. Following the expiration of the twenty (20) day demand letter, having received no payment to cure the Plaintiff's post-petition default, Litton Loan considered the Plaintiff to be in post-petition default and that the Bankruptcy automatic stay lifted and therefore Litton Loan proceeded, pursuant to the Order of December 26, 2008, to foreclose on the Plaintiff's loan. See Affidavit of Loch attached as Exhibit D.

19. Since the lifting of the Bankruptcy automatic stay, Litton Loan returned any and all post petition payments made by the Plaintiff to Litton Loan because the Plaintiff did not make a payment large enough to cure the post petition default and Litton Loan elected to proceed with foreclosure. *See* Affidavit of Loch attached as Exhibit D.

20. On or about August 7, 2008, Plaintiff was provided with a reinstatement quote. *See* Reinstatement Quote attached as Exhibit H. However, Plaintiff never made a payment to reinstate the subject loan. *See* Affidavit of Loch attached as Exhibit D.

21. On August 12, 2008, Litton Loan sent the Plaintiff an acceleration letter which accelerated the balance of the mortgage and notified the Plaintiff of the foreclosure sale date scheduled for September 12, 2008. *See* Letter dated August 12, 2008 attached as Exhibit 6 to the Affidavit of Loch attached as Exhibit D.

22. On or about October 13, 2008, the Plaintiff filed the above styled Complaint.

23.     Litton Loan has not taken any additional steps towards foreclosure in this case and the Plaintiff's property has not been foreclosed. *See* Deposition of Hudson at 47 attached as Exhibit I and Affidavit of Loch attached as Exhibit D.  In fact, the Plaintiff is currently residing in the home located at 6603 24th Avenue, Valley, Alabama, 36854 with her new husband. *See* Deposition of Hudson at 9-10.  Therefore, the Plaintiff is currently in post petition default from May 2008 to the current month.  During the pendency of this litigation, the Plaintiff has been making some, but not all, of her post-petition monthly mortgage payments to her attorney's trust account. *See* Deposition of Hudson at 57.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and evidence in the record demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Although the reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment" to show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 257; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). Summary judgment is proper if, after adequate time for discovery, the non-moving party fails to establish a genuine issue of fact regarding the existence of an element essential to its case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). If there is a complete failure of proof on an essential element, there is no genuine issue of material fact. *Celotex,* 477 U.S. at 323.

# ARGUMENT

## I. Litton Loan is entitled to a summary judgment because Plaintiff cannot present any affirmative evidence of improper charges on the Plaintiff's account.

Plaintiff has alleged in her Complaint that Litton Loan charged improper, unapproved, unauthorized and unlawful charges to the Plaintiffs mortgage loan account. In this case, following the entry of the Chapter 13 plan, the Plaintiff was obligated to continue making her regular monthly payments on her mortgage. *See* Chapter 13 Plan attached as Exhibit E. Once the debtor's Chapter 13 plan is confirmed, § 1322(b)(2) governs the lenders' rights to collect reimbursable expenses. *In re Padilla*, 379 B.R. 643, 655-56 (Bankr. S.D. Tex 2007). "Section 1322(b)(2) requires a confirmed plan to preserve a lender's pre-petition rights under its pre-petition contract." *Id.* at 656. Chapter 13 Plan provisions "are limited by the § 1322(b)(2) requirement that mortgage contracts cannot be modified." *In re Aldrich*, 2008 WL 4185989, *4 (Bankr. N.D. Iowa 2008). "[A]ny attempt to alter payment amounts, interest rates, or other specific terms set forth by the loan documents is an improper modification of rights, expressly prohibited by § 1322(b)(2)." *In re Collins*, 2007 WL 2116416, at *11 (Bankr. E.D. Tenn. 2007). Any plan provisions which would modify the terms of the security agreements are inappropriate, and would "constitute a revision of bankruptcy law, which is the prerogative of Congress and not the courts." *In re Aldrich*, 2008 WL 4185989 at *4. It is important to note that the Plaintiff's Chapter 13 plan does not include any "Other Provisions." Therefore, the terms of the Plaintiff's Mortgage are binding on the Plaintiff pursuant to the Chapter 13 plan and § 1322(b)(2).

In this case, the terms of the Mortgage have express provisions that allow the Defendant to charge broker price opinion fees, legal fees, property inspection fees, late fees, and insufficient funds fees for payments that are returned for insufficient funds. *See* Mortgage attached as Exhibit A. In addition, the December 26, 2008 Order of this Court expressly provided Litton

DOCSBHM\1653891\1\ 7
Case 08-08023 Doc 30 Filed 09/11/09 Entered 09/11/09 14:57:33 Desc Main
Document Page 7 of 16

Loan the right to charge fees incurred as a result of the Plaintiff's default on the loan. *See* Order dated December 26, 2008 attached as Exhibit G. In this case there is overwhelming evidence that supports the fact that in 2008 the Plaintiff made two payments that were returned for insufficient funds and one additional payment that was returned because of a closed account. *See* Exhibit D. By July 15, 2008, Plaintiff was 3 full post-petition payments behind and Litton Loan provided the Plaintiff with twenty days of written notice to cure the default, pursuant to the December 26, 2008 Order. Litton Loan considered the automatic stay to be lifted and Litton Loan proceeded with foreclosure proceedings by sending the Plaintiff a Notice of Acceleration Letter. *See* Exhibit D. All of these instances of insufficient funds payment, late payments, and outright missed payments evoke fees and charges on the Plaintiff's account pursuant to the terms of the Mortgage. Therefore, fees associated with late payments, insufficient funds checks, and missed payments were properly charged post petition pursuant to the terms of the Mortgage, the Plaintiff's Chapter 13 plan, as well as being authorized pursuant to section 1322(b)(2) of the Bankruptcy Code.

Based on the foregoing, Litton Loan respectfully requests that this Court dismiss each and every Count alleged by the Plaintiff that arises out of a claim that Litton Loan charged improper fees on the Plaintiff's account. Therefore, Litton Loan respectfully requests that this Court dismiss <u>Count Four</u> which alleges improper and unauthorized fees. Additionally, if this Court finds that the fees were properly charged pursuant to section 1322(b)(2), the Chapter 13 plan, and the terms of the Mortgage, then Litton Loan respectfully requests that this Court dismiss the other counts in Plaintiff's Complaint that arise out of allegations that Litton Loan charged improper and unauthorized fees. Such allegations include <u>Count One</u> for violation of the automatic stay for allegedly charging unapproved fees to the account.

**II. Because the fees charged on the Plaintiff's account were proper and authorized pursuant to the Chapter 13 plan, the Plaintiff's claim that the fees charged to the Plaintiff's account created a false delinquency and lead to an improper attempt to foreclose is due to be dismissed.**

The Plaintiff claims that the alleged improper fees and charges in this case created a false delinquency, and lead to an improper attempt to foreclose. To properly analyze the Plaintiff's alleged "false delinquency" it is necessary to examine first the post petition payments made by the Plaintiff. Based on the facts set forth above, from the date of this Court's Order on the Motion for Relief of Stay on December 26, 2008, the Plaintiff had 3 post petition payments returned for insufficient funds or a closed account. *See* Exhibits D. Therefore, factoring into consideration the number of post petition payments that were returned for insufficient funds it is undisputed that in July 2008, the Plaintiff had only made post-petition payments through April 2008 and therefore was a full 3 months in arrears. *See* Affidavit of Loch attached as Exhibit D. Setting aside any late fees or insufficient funds charges, there is no false delinquency because in July 2008 Plaintiff was delinquent on her post petition payments.

In addition to the fact that the Plaintiff did not make all of her post petition payments on the subject mortgage, the Plaintiff incurred post petition late fees and insufficient funds fees pursuant to the terms of the Mortgage. Therefore, the delinquency on the Plaintiff's account was made up of missing post petition payments, late fees and insufficient funds fees. It is the Defendant's position that the fees were properly charged on the Plaintiff's account pursuant to the Mortgage. Therefore, any and all claims that the fees created a false delinquency which lead to Litton Loan allegedly improperly attempting to foreclose are due to be dismissed because such fees were properly charged pursuant to section 1322(b)(2), the Chapter 13 plan and the terms of the Mortgage, and in this case the Plaintiff was in post petition default.

Based on the foregoing, Litton Loan respectfully requests that this Court dismiss each and every Count alleged by the Plaintiff that arises out of a claim that Litton Loan charged improper fees on the Plaintiffs account which lead to or created a false delinquency. Therefore, Litton Loan respectfully requests that this Court dismiss <u>Count One</u> which alleges a violation of the automatic stay because the alleged charges created a false delinquency, and <u>Count Four</u> for alleging claims of improper and unauthorized fees.

**III. Plaintiff's claim for relief under sections 105, 506(b) and Rule 2016(a) are due to be dismissed.**

Litton Loan respectfully requests that this Court dismiss <u>Count Three</u> and <u>Count Five</u> of the Plaintiff's Complaint. Count Three alleges that Litton Loan violated sections 105 and 506(b) of the Bankruptcy Code by charging post-petition legal fees and expenses without notice or Court approval. Count Five alleges that Litton Loan violated Rule 2016(a) of the Bankruptcy Rules of Procedure by failing to secure prior court approval for all alleged fees and charges applied to the Plaintiff's mortgage post petition.

Section 506(b) states "to the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges **provided for under the agreement** or State statute under which such claim arose." 11 U.S.C. § 506(b). Emphasis added. The Supreme Court and the Eleventh Circuit have held that § 506(b) has no application after a chapter 13 plan is confirmed. *Rake v. Wade*, 508 U.S. 464, 468, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)("506(b) applies only from the date of filing through the confirmation date")(legislatively overruled on other matters); *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1337 (11th Cir. 2000). In

*Telfair*, the lender, without prior court approval, assessed attorneys' fees pursuant to the lenders' deed of trust to the debtors' account and sought to collect the fees by applying post-confirmation payments to the outstanding fees. *Telfair*, 216 F.3d at 1337. The Eleventh Circuit "dismissed the debtor's complaint, holding that §506(b) simply has no application after a plan is confirmed." *Id.* at 1338-39.

There is no requirement under section 506(b) that Litton Loan get prior court approval for fees and charges that are "provided for under the agreement." Furthermore, Litton Loan did not violate any prior Order of this Court by charging post petition fees to the Plaintiff's Mortgage because this Court's December 26, 2007 Order expressly allows Litton Loan in the event of default to recover "reasonable attorneys fees and costs for preparing such notice as allowed in accordance with the provisions of the note and mortgage." To the extent the Plaintiff is asking the Court to impose, or issue an order that retroactively holds that fees were improperly charged on the Plaintiff's account, Litton Loan states that such an Order would violate the Chapter 13 plan, section 1322(b) and the terms of the Mortgage.

Additionally, as has been recognized by numerous federal courts, Section 105 does not provide plaintiffs with a private right of action for damages. *See, e.g., In re Potter*, 354 B.R. 301, 317 (N.D Ala. 2006) (agreeing with the "strict construction of Section 105(a)" as set forth in *In re Taylor*); *In re Taylor*, 263 B.R. 139, 151-52 (N.D. Ala. 2001) ("It is error for the court to rely on § 105(a) to confer a private right of action to collect damages.").[1] Section 105 is only a

---

[1] *See also, e.g., In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005) (no private right of action under Section 105); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) ("[Section 105] authorizes only such remedies as are 'necessary or appropriate to carry out the provisions of this title'"); *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 444-45 (1st Cir. 2000) ("[Section 105] does not itself create a private right of action" for damages); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000) (Section 105 may not be invoked to create private action to remedy alleged violation of other provisions of Code); *In re Henthron*,

"means to enforce the Code rather than an independent source of substantive authority." *In re UAL Corp.*, 412 F.3d 775, 778 (7th Cir. 2005). As a result, "any grant of authority given to the bankruptcy courts under § 105 must be exercised within the confines of the bankruptcy code." *Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994). Courts have noted that "bankruptcy courts may not use their equitable powers if to do so would strip another Code provision of its meaning, or as one court has more eloquently said, Section 105(a) does not necessarily 'constitute a roving commission to do equity.'" *In re WAPL Inc.*, 171 B.R. 130, 133 (Bankr. N.D. Ala. 1994) (internal citations omitted) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

Finally, the Plaintiff's reliance on Rule 2016(a) is improper because the rule "does not apply to a mortgage lender's contractual fees and charges arising after confirmation." *Aldrich*, 2008 WL 4185989 at *3; *In re Padilla*, 389 B.R. 409, 443 (Bankr. E.D. Pa. 2008) (finding that Rule 2016(a) does not apply if the creditor does not seek legal expenses from the bankruptcy estate). Furthermore, a ruling that such alleged fees and charges applied to the Plaintiff's mortgage post petition, which are explicitly allowed under the terms of the Mortgage would be a violation of § 1322(b)(2) because it would constitute a modification of the mortgage holder's contractual rights. *See In re Maxwell*, 343 B.R. 278, 279 (Bankr. M.D. Fla. 2005); *see also In re Araujo*, 277 B.R. 166, 167 (Bankr. D.R.I. 2002).

Based upon the foregoing, Litton Loan respectfully requests that this Court dismiss <u>Count Three</u> and <u>Count Five</u> of the Plaintiff's Complaint because the fees and charges alleged in this

---

299 B.R. 351, 355 (E.D. Pa. 2003) (Section 105(a) "does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code."); *Molloy v. Primus Auto. Fin. Servs.*, 247 B.R. 804, 818 n.12 (Bankr. C.D. Cal. 2000) (Section 105 "does not create a private right of action"); *Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 506-07 (N.D. Ill. 1998) ("this Court concludes that § 105 does . . . not authorize a private right of action").

case were proper and therefore, Plaintiff's claims under section 105, 506(b) and Rule 2016(a) are due to be dismissed.

### IV. Plaintiffs claim for violation of the automatic stay is due to be dismissed.

This Court entered Orders on December 26, 2008 on Motions for Relief of Stay filed by Litton Loan. In this Order, this Court specifically stated that "within the calendar month such payment comes due, and after a twenty (20) day written notice of default to Debtor(s) and Debtor(s) attorney, the stay provided under 11 U.S.C. § 362 and 11 U.S.C. § 1301 is terminated automatically without further order of this Court, as it relates to the enforcement of the lien regarding the aforementioned property, and LITTON, its successor or assigns, shall be free to enforce any and all of its respective rights, title and interest in and to the aforementioned property, including foreclosure, in accordance with the provisions of the note and mortgage and the laws of the State of Alabama." *See* Exhibit G. Therefore, to the extent the Plaintiff is claiming that this Defendant violated the automatic stay, Plaintiff's count for violation of the automatic stay is due to be dismissed because the Court's Order on December 26, 2007 expressly allowed the Defendant to proceed with foreclosure upon default. Thus, Defendant is not in violation of the automatic stay.

Additionally, to the extent the Plaintiff's claim for violation of the automatic stay arises out of the Plaintiff's claim that the Defendant charged improper or unauthorized fees on the Plaintiff's account, the Plaintiff's claim is due to be dismissed because any and all charges were permissible charges pursuant to §1322(b)(2), the terms of the Chapter 13 plan, and the subject Mortgage.

Based upon the foregoing, Defendant respectfully requests that this Court dismiss <u>Count One</u> of the Plaintiff's Complaint which alleges a violation of the automatic stay. Defendant

respectfully requests that this Court find that the Defendant did not violate the automatic stay in this case.

### VI. Plaintiff's Claim for Wrongful Foreclosure is due to be dismissed.

Despite the fact that the Plaintiff is in default on her Mortgage, at the present time, Litton Loan has not foreclosed on the Plaintiff's property. *See* Deposition of Hudson at 47 attached as Exhibit I and Affidavit of Loch attached as Exhibit D. In fact, the Plaintiff currently lives in the property, with her husband. *See* Deposition of Hudson at 9-10.

The Plaintiff cannot maintain a claim of wrongful foreclosure when the Plaintiff is still living in the property, and the property has not been foreclosed. Therefore, Litton Loan respectfully requests that this Court dismiss <u>Count Sixth</u> of the Plaintiff's Complaint for wrongful foreclosure.

WHEREFORE PREMISES CONSIDERED, Litton Loan respectfully requests that this Honorable Court grant summary judgment in favor of Litton Loan with respect to each and every Count alleged against Litton Loan[2], which includes Counts One, Three, Four, Five and Six alleged in the Plaintiff's First Amended Complaint against Litton Loan.

---

[2] Litton Loan notes that Count Two of the Plaintiff's Complaint, alleging a claim for violation of the FDCPA, is a claim stated only against former co-Defendant McCalla Raymer, who has been dismissed from this case and is no longer a party. Therefore, the claims alleged in Count Two are not against Litton Loan and therefore, have not been addressed in this Motion.

s/ Robin Beardsley
                                                            Robin L. Beardsley
                                                            Stephen Porterfield

                                                            **Attorneys for Litton Loan Servicing**

**OF COUNSEL:**
Sirote & Permutt, P.C.
2311 Highland Avenue South
Birmingham, AL 35205
Telephone: (205) 930-5100
Facsimile: (205) 930-5101
Email: rbeardsley@sirote.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the Defendants by providing an electronic copy on this the 11th day of September 2009 to:

Nicholas H. Wooten, Esq.
Wooten Law Firm, P.C.
Post Office Drawer 290
Lafayette, AL 36862

Christy Crow
Nathan Dickson
Jinks, Crow & Dickson
P.O. Box 350
219 Prairie Street North
Union Springs, AL  36089

s/ Robin Beardsley
OF COUNSEL
